1  Charles Hoelzel
2  32687 Salvia Circle
3  Winchester CA 92596
4  650-701-3667
5  cthoelzel@yahoo.com
6  Plaintiff in Pro Per

B/O  7

F I L E D
CLERK, U.S. DISTRICT COURT
11/27/2023
CENTRAL DISTRICT OF CALIFORNIA
BY:     ram         DEPUTY

8
9
10
11             **UNITED STATES DISTRICT COURT**
12             **CENTRAL DISTRICT OF CALIFORNIA**
13

14  Charles Hoelzel,                 Case No.: 5:23-cv-02496-CBM-SPx
15          Plaintiff                **COMPLAINT FOR DAMAGES**
16       vs.                         **PURSUANT TO CLAIMS FOR:**
17  Princess Cruise Lines, Ltd.,     **(1) BATTERY**
18          Defendant.               **(2) VIOLATION OF CIVIL**
19                                      **RIGHTS 18 U.S. CODE § 113 &**
20                                      **18 U.S.C. § 241**
21                                   **JURY TRIAL DEMANDED**
22
23
24                        **JURISDICTION**
- 25
26      1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331
27         and 28 U.S.C. §1367.
28

1

1

2

3

**VENUE**

4   2. Venue is proper under 28 U.S.C. §1391(e) because the event giving rise to

5   the Plaintiff's claims occurred in the Central District of California.

6

7

**PARTIES**

8   3. Plaintiff Charles Hoelzel is a 39 year-old Caucasian man and the father of

9   two young children. Plaintiff at all times relevant to this Complaint has been

10   a resident of Winchester, California and a citizen of the U.S.

11   4. Defendant Princess Cruise Lines, Ltd. is headquartered in Santa Clarita,

12   California and is relevant to this complaint as a corporation operating in

13   California.

14   5. The corporation sued herein is sued in a business capacity.

15

16

**STATEMENT OF FACTS**

17   6. On the morning of 05/31/2023 Plaintiff and friend Wade Patterson were

18   disembarking in Juneau, Alaska and Plaintiff was assaulted by an employee

19   of Defendant.

20   7. The reason the Plaintiff and friend had to disembark with their belongings

21   was because his friend was allowed to board without his passport under the

22   presumption that Plaintiff and friend were able to use the "Direct to Bus

23   Program" at the last port of call in Vancouver Canada.

24   8. The Plaintiff worked throughout trip with the staff on multiple occasions to

25   comply with the laws governing the cruise and travel into a foreign country.

26   Prior to the assault and battery, it was explained by a phone call to the cabin

27   of the Plaintiff and friend that the "Direct to Bus Program" had restrictions

28   for time for departure from airport. Furthermore, it was explained to the

2

Plaintiff that the flight which Princess Cruise Lines, Ltd scheduled departing from Vancouver, Canada was scheduled after the approved window for the "Direct to Bus Program" and that Wade Patterson could potentially have immigration issues trying to leave out of a foreign state.

9. The Plaintiff worked feverishly to have the flights out of Vancouver, Canada moved earlier but was told by personnel employed by Defendant that in the end the period for scheduling the "Direct to Bus Program" had elapsed and even if the departure times were moved forward the Plaintiff and friend would be unable to use the "Direct to Bus Program".

10. After further investigation and huge disruption in vacation plans, it was decided to disembark two ports of call early before the destination in Vancouver Canada because the 2nd to last port of call Ketchikan, Alaska didn't have a big enough airport to accommodate travel between Alaska and Los Angeles. The last port of call was also not an option because this would have been Vancouver, Canada. The Plaintiff and friend missed out on a once in a lifetime goal of fishing in the salmon capital of the world Ketchikan, Alaska.

11. During the disembarkation in Juneau, Alaska multiple security personnel employed by Defendant stood in front of the Plaintiff and friend and wouldn't allow the Plaintiff and friend to leave the ship on American soil. When asked why by Plaintiff, it was explained that employees of the Defendant couldn't allow disembarkation with Plaintiff and friend's belongings. The Plaintiff and friend responded with the situation about the immigration issues as explained above in this complaint.

12. When Plaintiff decided to leave because it was United States soil the Defendants security guards took the luggage out of Plaintiff's hands forcefully. At that time the Plaintiff decided it was appropriate to call 911 and request assistance from local law enforcement in Juneau, Alaska.

3

13. Two members of Juneau police department responded relatively quickly. It's important to note that Plaintiff at this time was emotional distraught and the stress that ensued lead to out of character actions. The Plaintiff was compliant with law enforcement until the gangway was raised. At that time the Plaintiff out of fear for his life decided to throw the evidence on the ground below which he collected on his cell phone in hopes it was preserved in case of further actions by personnel of Defendant.

14. At this point it is believed that a security guard manager named "Rex" employed by the Defendant was the one who tackled the Plaintiff from behind. The force was so strong that the Plaintiff's new jacket he bought while on the ship was shredded in multiple places. The Plaintiff at no point fought back while on the ship. The Plaintiff was detained and put in handcuffs by a Juneau police officer.

15. The Plaintiff complied with the Juneau police officer demands and was released once on land safely away from the situation on the ship. Wade Patterson was remanded to ship with another Juneau police officer in excess of an hour for questioning and eventually was also allowed to disembark from the ship.

16. It's worth noting that the day before an altercation also happened at disembarkation at the Skagway, Alaska where the Plaintiff and friend were made to wear what the Defendant named a "medallion" which literally tracked the whereabouts of the passengers. It was the start of a very dramatic episode because the Plaintiff didn't feel he should be required to retain such a device while on United States soil.

17. After a lengthy process the Juneau police officers and supervising police officers decided Plaintiff and friend weren't the ones at fault or a risk and helped get the Plaintiff and friend transferred to a hotel to settle down from the experiences that ensued. It's worth noting that this caused a chain

4

reaction, and that the Plaintiff did end up in the hospital and still suffers from shoulder pain on his right side because of this whole situation along with emotional pain and suffering.

18. The Plaintiff still suffers from the physical and emotional pain caused by the personnel of the Defendant. The Plaintiff has difficulty sleeping because the shooting pain in Plaintiffs right shoulder wakes Plaintiff multiple times a night. The Plaintiff requires chiropractic care and more than likely will have shoulder surgery in the future.

## FIRST CAUSE OF ACTION

### BATTERY

19. Plaintiff repeats and re-alleges each and all of the allegations contained in Paragraphs 1 through 19.

20. Plaintiff asserts a claim of battery against Defendant's personnel that they tackled Plaintiff based on their violent and unlawful touching of Plaintiff. Defendants' personnel ripped Plaintiffs jacket with unlawful force in the presence of local law enforcement.

21. Plaintiff didn't consent to being tackled. Plaintiff did not consent to being grabbed in such a manner that his right shoulder still has injury.

22. The aforementioned acts of the Defendants personnel were willful and malicious.

23. Defendants' actions were the direct cause of Plaintiffs severe injury to body. The Plaintiff still has shooting pain in the right shoulder that requires continual medical treatment.

24. A reasonable person in Plaintiffs situation would have been offended by the Defendant's personnel unlawful touching.

Complaint for Damages

## SECOND CAUSE OF ACTION
# VIOLATION OF CIVIL RIGHTS UNDER ASSAULTS WITHIN MARITAIME AND TERRITORIAL JURISDICTION FOR USE OF EXCESSIVE AND UNREASONABLE FORCE
## (18 U.S. CODE § 113 & 18 U.S.C. § 241)

## AS AGAINST ALL DEFENDANTS AND DEFENDANTS PERSONNEL

25. Plaintiff repeats and re-alleges each and all of the allegations contained in Paragraphs 1 through 25.

26. At all times complained herein, the Defendant's personnel were acting under the color of state law, pursuant to their authority as Princess Cruise Lines, Ltd. employees, and were acting in the course of and within the scope of their employment with Princess Cruise Lines, Ltd.

27. Defendants' conduct violated the Plaintiffs right not to be subjected to the unreasonable use of excessive force as guaranteed by the United States Constitution (18 U.S.C. § 241)

28. The actions of said Defendant's personnel, above described, constituted the use of excessive and unreasonable force. In particular, the Defendants personnel grabbed and tackled Plaintiff. The Defendants Personnel carried out such violent actions without and lawful reason.

29. The Defendants personnel actions of not allowing Plaintiff and friend to disembark into their own country of origin lead to Plaintiff being handcuffed and inflicted emotional and physical harm. Defendants' personnel took no action to alleviate Plaintiffs pain.

30. Furthermore, when Plaintiff brought up the actions that took place in late May of 2023 to a corporate risk management employee named Mary Kessler Jones she penalized the Plaintiff and friend from restricting Plaintiff and

6

friend from ever cruising with Princess Cruise Lines, Ltd.

31. The above acts or omissions of the Defendants personnel, and each of them, were undertaken while under the color of state law and resulted in the violation of Plaintiffs constitutional rights, as stated herein.

32. As a direct and proximate result of Defendants' personnel aforesaid acts, Plaintiff have suffered great mental, physical, emotional pain and suffering, along with financial loss. Defendants' personnel injured Plaintiffs right shoulder. Plaintiff is still unable to sleep throughout the night like he once was able to and requires continual medical treatment.

33. Defendants personnel use of excessive force was a substantial factor in causing Plaintiffs physical and emotional harm.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on all claims.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff request:

A. Compensatory damages, including general and special damages, in a sum in an amount according to proof;

B. All costs of suit necessarily incurred herein as allowed by 42 U.S.C. § 1988;

C. Such further relief as the Court deems just or proper.

Complaint for Damages

1

2    Dated November 27, 2023                      Respectfully submitted,

3                                                 Charles Hoelzel

4                                                 By:

5                                                      Plaintiff in Pro Per

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Damages